**CERTIFIED GROCERS MIDWEST, INC., Plaintiff,**

v.

**NEW YORK LIFE INSURANCE COMPANY, Defendant.**

**No. 92 C 6121.**

United States District Court, N.D. Illinois, E.D.

Nov. 25, 1992.

Stanley J. Adelman, Peter Scott Lubin, Rudnick & Wolfe, Chicago, IL, for Certified Grocers Midwest, Inc.

John Edward Burke, Claudia J. Lovelette, Nicholas J. Bua, Burke, Bosselman & Weaver, Chicago, IL, for New York Life Ins. Co.

Mary Lynn Farrell, Chicago, IL, for First Nat. Bank of Chicago.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Certified Grocers Midwest, Inc. ("Certified") brings this action against New York Life Insurance Company ("New York Life") pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–02. New York Life has moved to dismiss Certified's complaint, arguing that it does not present an actual controversy. Additionally, the parties have filed cross-motions for summary judgment. For the reasons set forth below, we deny New York Life's motion to dismiss, but grant its motion for summary judgment. Certified's motion for summary judgment is denied.

### I.

On September 12, 1975, New York Life, via assignment, obtained the right, title, and interest to a mortgage note dated October 7, 1974, executed by Hodgkins Property, Inc. ("Hodgkins") in favor of Advance Mortgage Corporation ("Advance"). The note, bearing a face amount of $20,475,000 with interest ultimately to be paid at the rate of 9½% per annum, is secured by a mortgage on certain property located at 6700 South East Avenue (now known as 6800 Sante Fe Drive) in Hodgkins, Illinois. On May 5, 1977, Certified entered into an agreement to purchase from Hodgkins the property at 6700 South East Avenue. Upon closing and with New York Life's approval, Certified assumed the obligations and rights as obligor and mortgagor under the note and mortgage.

In light of declining interest rates of late, Certified began to investigate the possibility of refinancing the above mentioned note and mortgage. In August of 1992, Certified's board of directors authorized a refinancing of the outstanding liability. Certified anticipates a commitment from a responsible lender to refinance the debt at an interest rate of 7.5% per annum. With a desire to accept such a commitment, Certified turned to the prepayment provision of the note and determined that it would be obligated to pay an additional 0.75% of the outstanding principal

being prepaid. On September 9, 1992, Certified delivered to New York Life a 90–day prepayment notice detailing Certified's intention to prepay the outstanding balance on the Note on December 10, 1992. It is undisputed that the principal sum outstanding as of December 10, 1992, will be $14,961,544.69. New York Life responded by letter dated September 10, 1992, stating that, in order to prepay on December 10, 1992, Certified was required by the terms of the note to pay an additional 4.5% of the principal being prepaid. Given the discrepancy in the parties' interpretations of the prepayment provision of the note, Certified filed this action seeking a declaration that, in order to prepay on December 10, 1992, Certified would be required to pay only an additional 0.75% of the principal being prepaid.

## II.

The gravamen of New York Life's motion to dismiss is that Certified's complaint merely seeks an advisory opinion in an effort to determine whether to prepay the mortgage. According to New York Life, that Certified's complaint does not present a justiciable controversy is borne out by the fact that it has not committed itself to prepay the outstanding principal on December 10, 1992. Indeed, Certified's prepayment notice states "[n]othing contained herein shall require Certified to prepay on December 10, 1992." We do not believe, however, that a plaintiff uncertain of its contractual rights must exercise those rights prior to seeking declaratory relief. As this court has previously stated, "[t]he purpose of a declaratory judgment is to allow the parties to understand their rights and liabilities so that they can adjust their *future action* to avoid unnecessary damages." *Rockwell Int'l Corp. v. IU Int'l Corp.*, 702 F.Supp. 1384, 1388 (N.D.Ill.1988) (emphasis added) (quoting *ACandS, Inc. v. Aetna Casualty and Surety Co.*, 666 F.2d 819, 823 (3d Cir.1981)). When viewed in the light most favorable to Certified, as required on a motion to dismiss, allegations of an intention to refinance, coupled with Board authorization and notice to New York Life, render the dispute justiciable. Consequently, we deny New York Life's motion to dismiss.

## III.

At issue in the parties' cross-motions for summary judgment is the interpretation of the following provision of the mortgage note:

No privilege is reserved to prepay principal until the fifteenth anniversary of the date of the first amortization payment required hereunder. Thereafter upon ninety (90) days written notice, privilege is reserved to pay the principal sum in full on the tenth day of any month, upon payment of a prepayment charge of five percent (5%) of the principal sum being prepaid, such prepayment charge to decline one-quarter of one percent (¼ of 1%) on each anniversary of the date of such first required amortization payment.

Certified concludes that the prepayment charge on December 10, 1992, will be 0.75% of principal to be prepaid. As December 10, 1992, is one month after the 17th anniversary of the date of the first required amortization payment, Certified calculated the prepayment charge as follows: 5% − 4.25% (0.25% × 17 years) = 0.75%. New York Life, on the other hand, contends that the 5% prepayment charge declines 0.25% on November 10 of every year *after* 1990. In other words, to prepay on December 10, 1992, the prepayment charge would be based on a multiplier of 4.5%, *i.e.*, 5% reduced by 0.25% for each of the two years since November 10, 1990 (the fifteenth anniversary of the first required amortization payment).

The parties agree that Illinois law governs the interpretation of the above provision. Under Illinois law, this court must first determine if the language under scrutiny is ambiguous. *See Metalex Corp. v. Uniden Corp. of Am.*, 863 F.2d 1331, 1333 (7th Cir.1988) (interpreting Illinois law). If we find that the provision is unambiguous, it is for the court to declare its meaning as a matter of law. *Id.* (citing *LaSalle Nat'l Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir.1987)). If, on the other hand, the language is ambiguous, the meaning becomes a question of fact, rendering summary judgment inappropriate. *Id.*

A contract, or provision thereof, is ambiguous under Illinois law only if it is "reasonably and fairly susceptible to more than one meaning." *Lenzi v. Morkin,* 116 Ill.App.3d 1014, 72 Ill.Dec. 414, 416, 452 N.E.2d 667, 669 (1st Dist.1983), *aff'd,* 103 Ill.2d 290, 82 Ill.Dec. 644, 469 N.E.2d 178 (1984). Applying that standard to the prepayment provision in question, it is clear that the language is unambiguous: to prepay on December 10, 1992, Certified is obligated to pay an additional charge equal to 4.5% of the principal to be prepaid. Certified's interpretation is flawed in that it ignores the key word "thereafter," as contained in the first clause of the provision's second sentence. There is no dispute that Certified had no right to prepay the outstanding principal until November 10, 1990, the fifteenth anniversary of the first required amortization payment. At that date, by the clear terms of the note, the prepayment charge is 5% of the principal being prepaid. The multiplier decreases by 0.25% on November 10 of each year *thereafter.* To suggest that the multiplier is decreased by 0.25% in years prior to the fifteenth anniversary of the first required amortization payment, years in which Certified had no right to prepay, is not only contrary to the plain language of the note, but defies logic.

The unambiguous language of the prepayment provision supports New York Life's interpretation of Certified's obligation in the event it elects to prepay on December 10, 1992. Accordingly, we grant New York Life's motion for summary judgment, and deny Certified's cross-motion.

## IV.

For the reasons as explained above, we deny New York Life's motion to dismiss Certified's complaint, but grant its motion for summary judgment. Certified's cross-motion for summary judgment is denied. It is so ordered.